EXHIBIT "1"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

MICHAEL J. PALLADINO, as President of the NEW YORK CITY DETECTIVES' ENDOWMENT ASSOCIATION, INC., NEW YORK CITY DETECTIVES' ENDOWMENT ASSOCIATION, INC., EDWARD D. MULLINS, as President of the SERGEANTS BENEVOLENT ASSOCIATION of the CITY OF NEW YORK, INC., SERGEANTS BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, INC., THOMAS DROGAN, as President of the LIEUTENANTS BENEVOLENT ASSOCIATION of the POLICE DEPARTMENT of the CITY OF NEW YORK, LIEUTENANTS BENEVOLENT ASSOCIATION of the POLICE DEPARTMENT of the CITY OF NEW YORK, JOHN DOE, JANE ROE and all POLICE OFFICERS named herein and others similarly situated,

**VERIFIED**
**COMPLAINT**

Plaintiffs' Demand
Trial By Jury

Plaintiffs,

-against-

THE CITY OF NEW YORK, the NEW YORK CITY POLICE DEPARTMENT, and RAYMOND W. KELLY, as COMMISSIONER of the NEW YORK CITY POLICE DEPARTMENT,

Defendants.

---------------------------------------------------------------------X

Plaintiffs, MICHAEL J. PALLADINO, as President of the NEW YORK CITY DETECTIVES' ENDOWMENT ASSOCIATION, INC., NEW YORK CITY DETECTIVES' ENDOWMENT ASSOCIATION, INC., EDWARD D. MULLINS, as President of the SERGEANTS BENEVOLENT ASSOCIATION of the CITY OF NEW YORK, INC., SERGEANTS BENEVOLENT ASSOCIATION of the CITY OF NEW YORK, INC., THOMAS DROGAN, as President of the LIEUTENANTS BENEVOLENT ASSOCIATION of the POLICE DEPARTMENT of the CITY OF NEW YORK, LIEUTENANTS

BENEVOLENT ASSOCIATION of the POLICE DEPARTMENT OF THE CITY OF NEW YORK, JOHN DOE, JANE ROE and all POLICE OFFICERS named herein and others similarly situated, by their attorneys, Certilman Balin Adler & Hyman, LLP, as and for their complaint against defendants, THE CITY OF NEW YORK, the NEW YORK CITY POLICE DEPARTMENT, RAYMOND W. KELLY, as COMMISSIONER of the NEW YORK CITY POLICE DEPARTMENT, allege as follows:

**NATURE OF THE ACTION**

1. This is a civil action for declaratory and injunctive relief based upon defendants' violations of the Fourth, Fifth and Fourteenth Amendments of the Constitution of the United States and Article I, §12 of the Constitution of the State of New York and pursuant to 28 U.S.C. §2201, for a declaration of rights of the parties and injunctive relief.

**JURISDICTION AND VENUE**

2. Jurisdiction is predicated upon 28 U.S.C. §§1331 and 1367 and general principles of ancillary and pendent jurisdiction.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391.

**THE PARTIES**

4. Plaintiff Michael Palladino is the President of the Detectives' Endowment Association, Inc. of the Police Department of the City of New York, Inc.

5. Plaintiff Detectives' Endowment Association of the Police Department, City of New York, Inc. ("DEA") is a municipal employee organization duly formed under the New York City Administrative Code and its members consist of all Detectives employed by the New York City Police Department.

6. Plaintiff Edward D. Mullins is the President of the Sergeants Benevolent Association of the City of New York, Inc.

7. Plaintiff Sergeants Benevolent Association of the City of New York, Inc. ("SBA"), is a municipal employee organization duly formed under the New York City Administrative Code and its members consist of all Sergeants employed by the New York City Police Department.

8. Plaintiff Lieutenant Thomas Drogan is the President of the Lieutenants Benevolent Association of the Police Department of the City of New York, Inc.

9. Plaintiff the Lieutenants Benevolent Association of the City of New York, Inc. ("LBA") is municipal employee organization duly formed under the New York City Administrative Code and its members consist of all Lieutenants employed by the New York City Police Department.

10. Plaintiffs "John Doe", "Jane Roe" and "All Police Officers named herein and others similarly situated" are nominal plaintiffs representing those whose identities are yet unknown, but who may be interested in this proceeding.

11. Defendant the City of New York ("City"), is a municipal corporation organized and existing pursuant to the laws of the State of New York and is a public employer under the New York City Administrative Code.

12. Defendant New York City Police Department ("Department") is a Department within the City created by the New York City Charter and a municipal agency duly formed under the New York City Administrative Code.

13. Defendant Raymond W. Kelly as the Commissioner of the New York City

Police Department ("Commissioner") is the head of the NYPD with overall responsibility for the operation of the Department consistent with law.

**THE LAW**

14. The Constitution of the United States, Amendment IV, entitled "Searches and Seizures" states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized.

15. The Constitution of the United States, Amendment XIV, entitled "Citizenship; Privileges and Immunities..." states in Section 1 as follows:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State where they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

16. The Constitution of the State of New York, Article I, entitled "Bill of Rights" §12, states in pertinent part:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

## THE FACTS

17. Plaintiffs and/or their members are employed by Defendant City as police officers in various capacities (collectively, "Police Officers").

18. Plaintiffs and/or their members are subject to the rules and regulations promulgated by Defendant Department and/or Defendant Commissioner.

19. Plaintiffs and/or their members are subject to the "Patrol Guide" which outlines the policies and procedures of Plaintiff Police Officers.

20. Procedure 203-04 of the Patrol Guide sets forth the "Fitness For Duty" provisions for Police Officers. *See* Exhibit "A"

21. The Fitness For Duty provision provides in relevant part as follows:

> 1. Be fit for duty at all times, except when on sick report.
> 2. Do not consume intoxicants to the extent that member becomes unfit for duty.
>
> * * *
>
> All members of the service are required to remain fit for duty as specified above, and are reminded of their absolute responsibility to remain fit for duty while in possession of their firearms.
>
> Any misconduct involving a Member's misuse of a firearm while unfit for duty due to excessive consumption of, and intoxication from, alcohol will result in that member's termination from the Department. Exceptional cases will be determined by the Police Commissioner, on a case by case basis.
>
> Furthermore, any misconduct involving members who are found to be unfit for duty due to excessive consumption and intoxication from alcohol, while armed with a firearm, will result in the inclusion of the charge of "Unfit For Duty While Armed," in Departmental disciplinary proceedings. In addition to those penalties imposed as a result of all other charges stemming from

> the misconduct, strict punitive sanctions will be imposed for any member upon whom the charge has been substantiated.
>
> Additionally, a uniformed member of the service who refuses to submit to chemical testing in connection with an alleged violation of section 1192 of the New York State Vehicle and Traffic Law (Driving While Intoxicated) will be charged with violating Patrol Guide procedure 203-10, page 1, step 4, "Engaging in conduct prejudicial to the good order, efficiency, or discipline of the Department."
>
> PERFORMANCE ON DUTY – PROHIBITED CONDUCT
>
> 1. Consuming intoxicants while in uniform whether on or off duty.
>
> * * *
>
> EQUIPMENT FIREARMS
>
> 1. Be armed at all times when in New York City, unless otherwise directed, or except as provided in item 2 below…
> 2. Be unarmed at own discretion while off duty when:
>
>    a. Possession of firearm, under the circumstances, would unnecessarily create a risk of loss or theft of the firearm, i.e., participation in sporting activities, attendance at beach and pool, etc., <u>OR</u>
>    b. On vacation, <u>OR</u>
>    c. Engaged in authorized off duty employment, <u>OR</u>
>    d. Engaged in any activity of a nature whereby it would be advisable NOT to carry a firearm, <u>OR</u>
>    e. There is a likelihood that member will be consuming alcoholic intoxicants.

*See* Exhibit "A".

22. Moreover, the Fitness For Duty provision provides for the "Removal of Firearms for Intoxicated Uniformed Member of the Service" at Procedure 206-12 of the Patrol Guide upon <u>reasonable suspicion</u> of Commanding Officers. *See* Exhibit "A", p. 293.

23. Notwithstanding the foregoing, and upon information and belief, Defendant

Department and/or Defendant Commissioner, stated on or about June 18, 2007, that the Department intended to implement a new rule or policy to mandate an automatic alcohol breathalyzer test after each and every time a uniformed Police Officer discharges a firearm which results in death or injury of a person.

24. On September 30, 2007, defendant Commissioner and/or Defendant Department issued an Interim Order, Reference P.G. 212 Series No. 52, with the subject "Alcohol Testing for Uniformed Members of the Service Involved in Firearms Discharges Resulting in Injury to or Death of a Person" ("Interim Order"). *See* Exhibit "B".

25. The Interim Order provides, *inter alia,* that uniformed member(s) of the service, whether on or off-duty, who discharge a firearm will be tested using a portable breathalyzer test device ("PBT"). If the reading on the PBT device is .08 or greater, the "subject" is to respond to an Internal Affairs Bureau ("IAB") testing location for a further test using an Intoxilyzer. The entire testing process will be videotaped by a member of the Highway District. When the Intoxilyzer reading is .08 or greater, a copy of the videotape will be provided to the IAB Duty Captain. If the member is apparently unfit for duty, the P.G. 206-12 provision for "Removal of Firearms From Intoxicated Uniformed Member of the Service" is controlling. *See* Exhibit "A".

26. There is no provision whatsoever in the Patrol Guide or more particularly, in the Fitness For Duty provision, mandating or warranting suspicionless searches after a uniformed Police Officer discharges a firearm which results in death or injury of a person.

27. The Interim Order is unconstitutionally vague for a variety for reasons.

28. A non-exhaustive list of examples of the vagueness of the Interim Order

follows:

a. The Interim Order does not define the term "injury" or to whom the terms "injury" or "death" apply. Thus, for example, suspicionless searches can be conducted where there is an extremely minor injury, or where an injury or death is not proximately caused by the discharge of a Police Officer's firearm, or when the discharge of a firearm results in the death of a Police Officer.

b. The Interim Order does not define "person." Thus, for example, an injured or dead uniformed Police Officer could be subject to automatic suspicionless searches.

c. The Interim Order does not define the terms "Involved in Firearms Discharges", "police involved firearms discharge," or "involved members of the service." Thus, a Police Officer may be subject to a suspicionless search even if he or she does not discharge his or her own firearm.

d. The Interim Order does not specify "the number of different means" by which the suspicionless searches will be conducted.

e. The Interim Order does not adequately set forth or establish the "private setting" or "dignified, respectful fashion" in which the suspicionless searches are to be conducted.

f. The Interim Order does not prescribe the ability to use the test results once administered.

g. The Interim Order does not discuss or establish right(s) of Police Officer(s) to independently evaluate test samples and results.

h. The Interim Order does not establish the ability of Police Officer(s) to obtain a copy of a videotaped testing.

i. The Interim Order references a "specially designed form" and "specially designed checklist" to be utilized in administering the suspicionless searches, but does not annex same thereto. Thus, Plaintiff(s) are wholly deprived of any advance notification or due process in connection with the conduct of the searches.

29. The Interim Order does not apply outside the geographic boundaries of New York City notwithstanding that uniformed Police Officer(s) may be involved in the discharge of firearm(s) outside New York City limits, and thus the Interim Order may not be applied even-handedly and may result in disparate treatment of Police Officers.

30. Police Officers are extensively trained in the use of firearms.

31. Police Officers are required to carry the implementation of their firearms both on and off duty except as may otherwise be set forth in the Patrol Guide.

32. Police Officers are expected to be prepared to use firearms within the regular scope of their employment, even when they are "out of uniform" and/or are off-duty.

33. Police Officers are expected to be prepared to use firearms within the regular scope of their employment, which scope is 24 hours a day, seven days a week.

34. The discharge of firearm(s) by Police Officers is reasonably expected and a foreseeable event.

35. The discharge of firearm(s) is an ordinary risk of employment for Police Officers.

36. The Interim Order has a chilling effect on the ability of Police Officer(s) to make split second life and death decisions as they must within the regular scope of their employment, both on and off duty.

37. Upon information and belief, Defendant(s) have not conducted any studies establishing any causal link between the discharge of firearm(s) by Police Officers and the use of alcohol by Police Officers.

38. The "2006 Firearms Discharge Report" prepared by the Police Academy Firearms and Tactics Section, and upon information and belief, all such Reports for prior years, contain no studies or statistics as to the interrelationship between the discharge of firearm(s) by Police Officers and the use of alcohol.

39. Police Officers are already subject to both random and reasonable suspicion drug testing as well as drug and alcohol testing in specified, defined circumstances.

40. The act of discharging a firearm in the course of duty by a uniformed Police Officer does not, without more, provide reasonable suspicion of the use of alcohol.

41. The Interim Order is a complete departure from anything set forth in the Patrol Guide or in actual practice.

42. Alcohol breathalyzer testing was never before employed after each and every discharge of a firearm by a Uniformed Police Officer which resulted in death or injury of a person.

43. Defendant Department and/or Defendant Commissioner seek to improperly

broaden the testing and/or searching of uniformed Police Officers without reasonable justification.

44. There are no "special needs" justifying alcohol testing absent reasonable individualized suspicion.

45. The Interim Order states that ingestion of alcohol is not prohibited while Police Officer(s) are off duty, but rather suggests that it "would be prudent not to ingest alcoholic beverages up to four (4) hours prior to their commencement of their tour of duty".

46. The Defendant(s)' latest attempt to implement automatic mandatory alcohol or breathalyzer tests upon the discharge of firearm(s) by uniformed Police Officer(s) which results in death or injury of a person is a violation of the Police Officer(s)' constitutional right against unlawful searches and seizures and privacy interests protected by law.

47. The Interim Order directs that "indicia" of intoxication as indicated in Appendix "A" be "taken into account in determining fitness for duty". This indicia form the rational basis for searches upon reasonable suspicion, and thus should be employed in the first instance prior to any other form of alcohol testing or suspicionless searches.

**FIRST CAUSE OF ACTION – VOID FOR VAGUENESS**

48. Plaintiffs repeat and reallege paragraph 1 through 47 as if fully set forth herein.

49. The Interim Order is unclear and vague on its face.

50. The Interim Order does not adequately set forth as to who, when, where, and how it applies.

51. The Interim Order does not define or provide specific criteria as to the critical terms used therein, inter alia, "injury", "death", "person", "involved in", "private setting" or

"number of different means."

52. The Interim Order subjects Police Officer(s) who have discharged a firearm to suspicionless searches when it is unknown as to whether their firearm(s) caused injury or death of a person.

53. The Interim Order does not include the "specially designed form" and "specially designed checklist" that are to be used in conducting the searches.

54. The Interim Order does not specifically set forth to whom critical terms apply.

55. The Interim Order does not sufficiently establish guidelines and procedures for the use of test results or access thereto by affected uniformed Police Officers.

56. Given the vagueness of the Interim Order and obvious flaws therein which affect, hinder and impair plaintiff(s)' constitutional rights, the Interim Order should be determined to be in violation of the Due Process clause contained in the United States and New York State Constitution(s) and void for vagueness.

**SECOND CAUSE OF ACTION – DECLARATORY JUDGMENT**

57. Plaintiffs repeat and reallege paragraph 1 through 56 as if fully set forth herein.

58. There exists an actual controversy between the parties as to whether the Interim Order setting forth Defendant(s)' intent to implement automatic alcohol breathalyzer tests upon the discharge of firearm(s) by uniformed Police Officer(s) which results in injury or death of a person constitutes a constitutional violation of the Police Officer(s)' rights and protected privacy interests.

59. Plaintiffs are in need of a declaration of their rights under the United States Constitution, Constitution of the State of New York, protected privacy interests and relevant

caselaw.

**THIRD CAUSE OF ACTION – PERMANENT INJUNCTION**

60. Plaintiffs repeat and reallege paragraphs 1 through 59 as if fully set forth herein.

61. In violation of Plaintiff(s)' constitutional right(s) under the Fourth Amendment of the U.S. Constitution and the Constitution of the State of New York, by the Interim Order, Defendant(s) are intending to employ suspicionless searches upon Police Officers after each and every discharge of firearm(s) by uniformed Police Officer(s) which results in death or injury of a person.

62. Plaintiffs will be damaged by the Interim Order mandating suspicionless searches each and every time a firearm(s) is discharged by uniformed Police Officer(s) which results in death or injury of a person.

63. Plaintiff(s) will suffer injury unless the Interim Order mandating suspicionless searches each and every time a firearm(s) is discharged by uniformed Police Officer(s) which results in death or injury of a person is permanently enjoined.

64. Plaintiff(s)' injury cannot be adequately calculated or compensated by monetary damages.

65. Plaintiff(s) are entitled to a permanent injunction enjoining Defendant(s) from further implementation and/or application of the Interim Order providing for automatic breathalyzer testing of a person, the discharge of firearm(s) by uniformed Police Officer(s) which results in death or injury of a person, without reasonable suspicion of the use of alcohol by the Police Officer(s) involved.

**WHEREFORE**, plaintiffs demand judgment as follows:

(1) On the first cause of action, a judgment declaring that the Interim Order is unconstitutionally vague and thus void;

(2) On the second cause of action, a judgment declaring that the Defendant(s) implementation of the Interim Order providing for automatic alcohol breathalyzer testing of Police Officer(s) upon the discharge of a firearm(s) by uniformed Police Officer(s) without reasonable suspicion of the use of alcohol by the Police Officer(s) involved, is a violation of Plaintiff(s)' constitutional and legal rights under the Fourth Amendment of the U.S. Constitution, Constitution of the State of New York and protected privacy interests;

(3) On the third cause of action, a permanent injunction enjoining Defendant(s), their agents, servants, employees, officers and attorneys and those persons in active concert or participation with Defendant(s), from further implementing and/or applying the Interim Order which provides for the automatic use of alcohol breathalyzer testing of Police Officer(s) upon the discharge of a firearm(s) by uniformed Police Officer(s) without reasonable suspicion of the use of alcohol by the Police Officer(s) involved;

(4) Such other and further relief as may be just and proper.

Dated: East Meadow, New York
October 4, 2007

CERTILMAN BALIN ADLER & HYMAN, LLP
By: ____________ 4850
MICHAEL C. AXELROD, Esq.
Donna-Marie Korth, Esq.
Candace Gladston, Esq.
Jennifer A. Bentley, Esq.
Attorneys for Plaintiffs
90 Merrick Avenue
East Meadow, New York 11554
(516) 296-7000

**VERIFICATION**

**STATE OF NEW YORK )**
**)ss.:**
**COUNTY OF NEW YORK)**

MICHAEL J. PALLADINO, being duly sworn, deposes and says:

1. I am the President of the New York City Detectives' Endowment Association, Inc., a Plaintiff in the within proceeding and a named Plaintiff in my capacity as President of the New York City Detectives' Endowment Association, Inc.,

2. I have read the foregoing **COMPLAINT** and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true. This verification is made by me because the above party is an incorporated Union and I am a member and officer thereof. The grounds of my belief as to all matters not stated upon my own knowledge are as follows: records and documents maintained or obtained by the Union.

Michael J. Palladino
MICHAEL J. PALLADINO

Sworn to before me this
4th day of October, 2007

Sharon Robertson
NOTARY PUBLIC

SHARON ROBERTSON
Notary Public, State of New York
No. 4946117
Qualified in Queens County
Commission Expires Jan. 27, ~~199~~ 2011

**VERIFICATION**

**STATE OF NEW YORK )**
**)ss.:**
**COUNTY OF NEW YORK)**

THOMAS DROGAN, being duly sworn, deposes and says:

1. I am the President of the Lieutenants Benevolent Association of the Police Department of the City of New York, a Plaintiff in the within proceeding and a named Plaintiff in my capacity as President of the Lieutenants Benevolent Association of the Police Department of the City of New York.

2. I have read the foregoing **COMPLAINT** and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true. This verification is made by me because the above party is an incorporated Union and I am a member and officer thereof. The grounds of my belief as to all matters not stated upon my own knowledge are as follows: records and documents maintained or obtained by the Union.

THOMAS DROGAN

Sworn to before me this
9 day of October, 2007

NOTARY PUBLIC

MICHAEL A. PIRONE
Notary Public, State of New York
No. 01PI5061799
Qualified In Nassau County
Commission Expires 06 / 17 / 20 10

Exhibit A

6. Keep Department locker neat, clean and secured with combination lock (without identifying serial number) that conforms to Equipment Section specifications.
7. Affix POLICE DON'T MOVE (Misc. 1261) sticker to assigned locker with rank, name, shield and squad number captions filled in.

[I.O. 23 s 01] *8. Affix Gun Safety Sticker (SP414) to assigned locker and at all Department firearms safety stations*

9. Apply for interview with Police Commissioner in writing (include squad or chart numbers), ONLY when action or relief cannot be obtained by other means.

**Procedure No: 203-04** **Date Effective: 07-28-00**

# FITNESS FOR DUTY

## FITNESS FOR DUTY

1. Be fit for duty at all times, except when on sick report.
2. Do not consume intoxicants to the extent that member becomes unfit for duty.

## [Rev 00-3] *ADDITIONAL DATA*

[I.O. 7 s 01] *All members of the service are required to remain fit for duty as specified above, and are reminded of their absolute responsibility to remain fit for duty while in possession of their firearms.*

*Any misconduct involving a Member's misuse of a firearm while unfit for duty due to excessive consumption of, and intoxication from, alcohol will result in that member's termination from the Department. Exceptional cases will be determined by the Police Commissioner, on a case by case basis.*

*Furthermore, any misconduct involving members who are found to be unfit for duty due to excessive consumption and intoxication from alcohol, while armed with a firearm, will result in the inclusion of the charge of "Unfit For Duty While Armed," in Departmental disciplinary proceedings. In addition to those imposed as a result of all other charges stemming from the misconduct, strict punitive sanctions will be imposed for any member upon whom the charge has been substantiated.*

*Additionally, a uniformed member of the service who refuses to submit to chemical testing in connection with an alleged violation of section 1192 of the New York State Vehicle and Traffic Law (Driving While Intoxicated) will be charged with violating Patrol Guide procedure 203-10, page 1, step 4, "Engaging in conduct prejudicial to the good order, efficiency, or discipline of the Department."*

*Members of the service are also reminded of the Department's commitment to the many counseling and assistance programs available for a wide variety of problems. Members who are experiencing problems related to alcohol, or know of any other member who may be experiencing problems related to alcohol, are strongly encouraged to call HELPLINE at (718) 271-7777, in order to achieve confidential assistance.*



© FPA July, 2001

# REMOVAL OF FIREARMS FROM INTOXICATED UNIFORMED MEMBER OF THE SERVICE

## PURPOSE

To determine if an on/off duty uniformed member of the service is unfit for duty due to intoxication.

## DEFINITION

<u>INTOXICATION</u> - Unfitness for duty due to the influence of alcohol, narcotics, or other drug, or under circumstances in which surrounding events of a timely nature indicate that the member may have been intoxicated during an earlier period directly related to the incident in question.

## PROCEDURE

Upon observing a uniformed member of the service who appears unfit for duty due to intoxication:

### SUPERVISORY MEMBER

1. Direct that member remain at Department facility or other location pending the arrival of commanding officer/duty captain.
2. Prepare, immediately, **SUPERVISOR'S FITNESS FOR DUTY REPORT (PD469-150)** based upon observations of member of the service.
3. Notify precinct commander/duty captain to respond to facility.

### COMMANDING OFFICER/DUTY CAPTAIN

4. Prepare, immediately, **SUPERVISOR'S FITNESS FOR DUTY REPORT** based upon observations of member of the service.
5. Conduct an investigation to determine if member is unfit for duty due to intoxication at the time of the alleged misconduct.

> ***NOTE*** *Common sense standards will be applied to determine whether a member of the service is unfit for duty due to intoxication. Commanding officers/duty captains will examine the totality of the circumstances and will consider all credible relevant information when determining a member's fitness for duty. Such information will include all* ***SUPERVISOR'S FITNESS FOR DUTY REPORTS*** *prepared, any witness statements made by civilians or members of the service, and any available scientific evidence (Breathalyzer, blood test, etc.). On the basis of all available information, viewed in light of the time elapsed since any alleged acts of misconduct or since the first supervisory observation of the member, the commanding officer/duty captain will conclude whether the member was unfit for duty at the time of the alleged misconduct.*

6. Remove firearms when it is determined that member is intoxicated (see *P.G.206-17, "Removal And Restoration Of Firearms"*).
7. Place member on modified assignment or suspend from duty, as appropriate.
8. Advise member of availability of Counseling Service Program.

> ***NOTE*** *A supervisory officer is mandated in all cases to contact the Counseling Services Unit on behalf of a member who is placed on modified assignment, suspended, or has his/her firearms removed due to being unfit for duty. The services of the Counseling Service Program are not available to personnel for illegal drug use and/or abuse problems.*

**COMMANDING OFFICER/DUTY CAPTAIN (continued)**

9. Have supervisory officer contact Counseling Service DIRECT, during normal business hours. At other times, conferral with a counselor may be requested by contacting the Sick Desk supervisor.
10. Prepare five (5) copies of all completed **SUPERVISOR'S FITNESS FOR DUTY REPORTS** (commanding officer/duty captain's and referring supervisor's).
11. Prepare seven (7) copies of a report on **Typed Letterhead** detailing observations and circumstances that led to determination that member was unfit for duty and forward each, with copies of all **SUPERVISOR'S FITNESS FOR DUTY REPORTS**, as follows:
    a. First Deputy Commissioner - Original (DIRECT)
    b. First Deputy Commissioner (THOUGH CHANNELS)
    c. Chief of Department (DIRECT)
    d. Chief of Personnel (DIRECT)
    e. Deputy Commissioner – Trials
    f. Department Advocate's Office
    g. Member's commanding officer.

***ADDITIONAL DATA***

*Prior to final adjudication of a disciplinary matter, in all misconduct cases in which the use of alcohol is indicated, a conferral with the Early Intervention Unit must be made, and an alcoholism assessment by the Counseling Services Unit, must be conducted. In addition, in appropriate cases, final adjudication of the disciplinary matter will be held in abeyance pending completion of treatment for alcoholism. The Department Advocate's Office or the Office of the Special Prosecutor, as appropriate, are required to ensure that these steps are taken.*

***RELATED PROCEDURES***

*Cause For Suspension Or Modified Assignment (P.G. 206-07)*
*Suspension From Duty (P.G. 206-08)*
*Modified Assignment (P.G. 206-10)*
*Administration Of Drug Screening Tests For Cause (P.G. 205-30)*
*Removal/Restoration Of Firearms (P.G. 206-17)*

***FORMS AND REPORTS***

*SUPERVISOR'S FITNESS FOR DUTY REPORT (PD469-150)*
*Type Letterhead*



© FPA January, 2004

## PERFORMANCE ON DUTY – PROHIBITED CONDUCT

1. Consuming intoxicants while in uniform whether on or off duty.
2. Bringing or permitting an intoxicant to be brought into a Department building, facility, booth, boat, or vehicle, except in performance of police duty.
3. Entering premises serving intoxicants, except for meal or performance of duty.
4. Carrying a package, umbrella, cane, etc., while in uniform, except in performance of duty.
5. Recommending use of particular business, professional or commercial service to anyone except when transacting personal affairs.
6. Steering business, professional or commercial persons to a prospective client requiring such services except when transacting personal affairs.
7. Consenting to payment by anyone to regain lost or stolen property or advising such payment, except towing fees as provided by law for recovered stolen vehicles.
8. Riding in any vehicle, other than a Department vehicle to which assigned, while in uniform, except when authorized or in an emergency (sergeants and police officers only).
9. Using Department logo unless authorized by Police Commissioner.
10. Wearing any item of apparel which contains a Department logo or shield, or in any way identifies its wearer with the New York City Police Department, unless approved by the Uniform and Equipment Review Committee, prior to being worn by a member of the service, uniformed or civilian, on or off duty.
11. Engaging in card games or other games of chance in a Department facility.
12. Engaging in illegal gambling anywhere except in performance of duty.
13. Having any person make a request or recommendation that affects the duties of any member of the service, except as provided by Department procedures.
14. Engaging in conduct defined as discriminatory in *P.G. 205-36, "Employment Discrimination,"* "SCOPE" statement.
15. Using Department letterhead, personnel, equipment, resources, or supplies for any non-Department purpose or non-city purpose.

[REV 01-01] *16. Wearing or carrying an unauthorized beeper/pager and/or cellular telephone while on duty.*

[I.O. 35 s 04] *17. Appropriating or using official Department digital/analog recorded media, (e.g. video tape, digital computer files or digital audio/video recording) except as authorized for official Department business.*



©FPA January, 2005

## PERFORMANCE ON DUTY – PROHIBITED CONDUCT

1. Consuming intoxicants while in uniform whether on or off duty.
2. Bringing or permitting an intoxicant to be brought into a Department building, facility, booth, boat, or vehicle, except in performance of police duty.
3. Entering premises serving intoxicants, except for meal or performance of duty.
4. Carrying a package, umbrella, cane, etc., while in uniform, except in performance of duty.
5. Recommending use of particular business, professional or commercial service to anyone except when transacting personal affairs.
6. Steering business, professional or commercial persons to a prospective client requiring such services except when transacting personal affairs.
7. Consenting to payment by anyone to regain lost or stolen property or advising such payment, except towing fees as provided by law for recovered stolen vehicles.
8. Riding in any vehicle, other than a Department vehicle to which assigned, while in uniform, except when authorized or in an emergency (sergeants and police officers only).
9. Using Department logo unless authorized by Police Commissioner.
10. Wearing any item of apparel which contains a Department logo or shield, or in any way identifies its wearer with the New York City Police Department, unless approved by the Uniform and Equipment Review Committee, prior to being worn by a member of the service, uniformed or civilian, on or off duty.
11. Engaging in card games or other games of chance in a Department facility.
12. Engaging in illegal gambling anywhere except in performance of duty.
13. Having any person make a request or recommendation that affects the duties of any member of the service, except as provided by Department procedures.
14. Engaging in conduct defined as discriminatory in *P.G. 205-36, "Employment Discrimination,"* "SCOPE" statement.
15. Using Department letterhead, personnel, equipment, resources, or supplies for any non-Department purpose or non-city purpose.
16. Wearing or carrying an unauthorized beeper/pager and/or cellular telephone while on duty.

[I.O. 28 s 07] *17. Manipulating manually or electronically, transmitting in any form, or distributing any official Department recorded media or recorded media coming into possession of the Department as evidence or for investigative purposes except as authorized for official Department business. Recorded media includes videotapes, photographic images or pictures, audio recordings, electronic or internet files or any like forms to be available in the future.*

[I.O. 13 s 07] *18. Wearing, carrying, or using an unauthorized portable radio while on duty.*

*19. Making an unauthorized radio transmission.*



©FPA July, 2007

# FIREARMS – GENERAL REGULATIONS

## EQUIPMENT FIREARMS

1. Be armed at all times when in New York City, unless otherwise directed, or except as provided in item 2 below, with:
   a. Service revolver/pistol or off duty revolver/pistol as specified in *P.G. 204-09, "Required Firearms And Equipment."*
2. Be unarmed at own discretion while off duty when:
   a. Possession of firearm, under the circumstances, would unnecessarily create a risk of loss or theft of the firearm, i.e., participation in sporting activities, attendance at beach and pool, etc., OR
   b. On vacation, OR
   c. Engaged in authorized off duty employment, OR
   d. Engaged in any activity of a nature whereby it would be advisable NOT to carry a firearm, OR
   [REV 3-01] *e. There is a likelihood that member will be consuming alcoholic intoxicants.*

> NOTE *In those instances in which an off duty uniformed member is required to carry a firearm, the member concerned MUST CARRY either the regulation service revolver or pistol, or an authorized off duty revolver or pistol. A uniformed member who performs undercover duty and who has been authorized to carry a special weapon (see A.G. 305-05, "Authorization for Special Weapons") is permitted to carry the special weapon in lieu of the regulation firearms specified in P.G. 204-09 while off duty. The carrying of these firearms while off duty applies within the City and State of New York and also in those states outside New York State which permit visiting police officers to carry firearms within their state boundaries by virtue of their status as police officers.*

3. Record all revolvers and pistols on **FORCE RECORD (PD406-143).**
   a. Service revolvers/pistols, and off duty revolvers/pistols must conform to the specifications and standards of the Firearms and Tactics Section, Police Academy.
4. Do not modify revolvers or pistols without written permission of the Commanding Officer, Firearms and Tactics Section.
   a. Modifications permitted will be entered on **FORCE RECORD.**
5. Have service revolvers/pistols, and off duty revolvers/pistols not purchased at the Equipment Section inspected and tested by a Firearms and Tactics Section gunsmith prior to use.
6. Carry handguns (gun collections, etc.), other than service and off duty guns, only while enroute to or from practice range or similar activity.

> NOTE *When carrying such weapons, member must be armed with an authorized on duty or off duty firearm. The firearm being transported that is not authorized for on duty or off duty use shall be unloaded.*

7. Safeguard weapons at all times.
8. Do not store or leave firearm in an unattended motor vehicle.
9. Do not carry firearms in briefcases, handbags, fanny packs, hip packs, tote bags, knapsacks, paper bags or similar devices.

10. Carry firearms, on the person, in an appropriate holster specifically designed to afford maximum protection against loss of weapon.

> NOTE *__All__ holsters, regardless of type, style, or design (i.e., ankle, shoulder or belt holster) must be specifically designed for the weapon being carried. "One size fits all," "Clip-on," and "belly band" holsters are __**prohibited**__.*

11. Use only approved Department issued ammunition for use in revolvers/pistols.
12. For members authorized to carry service revolver - Ensure that cylinder is fully loaded with appropriate ammunition. Maintain twelve (12) rounds of ammunition in two (2) speedloaders on duty belt.
    a. Keep twelve (12) extra rounds of ammunition in locker at primary place of duty ***or*** on the duty belt in two (2) ammo pouches.
13. For members authorized to carry 9MM pistol - Ensure that one (1) round of ammunition is in the chamber and fifteen (15) rounds in the magazine at all times.
    a. Maintain fifteen (15) rounds in each of the two (2) magazines carried on the duty belt.

> NOTE *Those uniformed members of the service authorized to carry specialized undercover firearms as per A.G. 305-05, "Authorization for Special Weapons," will also ensure that the maximum number of rounds are loaded in each magazine, and that a round is loaded in the chamber of the weapon, as applicable.*

14. Comply with *P.G. 205-03, "Responsibility For Weapons While Sick,"* if member expects to go on extended sick leave.
15. Carry ONLY authorized firearms when on duty.
    a. Permission of commanding officer is required PRIOR to carrying special weapons while performing duty (see *A.G. 305-05, "Authorization For Special Weapons").*
16. Do not enter Family Court or Supreme Court Matrimonial Parts while armed if involved, OTHER THAN AS ARRESTING OFFICER OR ON OFFICIAL BUSINESS, in Family Court case or Supreme Court matrimonial case.
    a. Safeguard firearms at a location other than Family Court or Supreme Court OR if within New York City, the member concerned may elect to deliver firearm to desk officer of precinct in which Family Court or Supreme Court is located.
    b. Uniformed member of the service present at Family Court or Supreme Court as an arresting officer or on official business will report to the court officer supervisor and sign the Law Enforcement Officer log.



© FPA January, 2002

Exhibit B





# INTERIM ORDER

| SUBJECT: ALCOHOL TESTING FOR UNIFORMED MEMBERS OF THE SERVICE INVOLVED IN FIREARMS DISCHARGES RESULTING IN INJURY TO OR DEATH OF A PERSON | | |
|---|---|---|
| DATE ISSUED: | REFERENCE: | NUMBER: |
| 09-30-07 | **P.G. 212 SERIES | 52 |

1. In an effort to ensure the highest levels of integrity at the scene of firearms discharges, all uniformed members of the service involved in firearms discharges, which result in injury to or death of a person, will be subject to Department administered alcohol testing.

2. Accordingly, when a uniformed member of the service, on or off duty, is involved in a firearms discharge within New York City which results in injury to or death of a person, the following procedure will be complied with:

**PURPOSE**

To ensure the highest levels of integrity at the scene of police involved firearms discharges which result in injury to or death of a person, on or off duty, within New York City.

**PROCEDURE**

When involved in, or responding to the scene of a police involved firearms discharge which results in injury to or death of a person, on or off duty, within New York City:

**UNIFORMED MEMBER OF THE SERVICE**

1. Request immediate response of patrol supervisor.
2. Comply with the provisions of *P.G. 212-29, "Firearms Discharge by Uniformed Members of the Service."*

**PATROL SUPERVISOR**

3. Notify Operations Unit of shooting, immediately, and request response of Internal Affairs Duty Captain, Internal Affairs personnel and the Patrol Services Bureau Duty Inspector and Duty Captain.

**DUTY CAPTAIN/ INSPECTOR**

4. Inform uniformed member(s) of the service who discharged their firearm that they will be subject to alcohol testing.
5. Ensure involved member(s) of the service remain on the scene when feasible and consistent with safety (i.e., hospitalization not immediately required); pending arrival of Internal Affairs Bureau personnel assigned to administer alcohol test.
6. Notify IAB Command Center of location of involved member(s) of the service if they are removed from location of firearms discharge.

**IAB COMMAND CENTER**

7. Notify assigned IAB personnel and the IAB Duty Captain of any pertinent information including any change of location of involved member(s) of the service.

**INTERNAL AFFAIRS BUREAU DUTY CAPTAIN**

8. Respond to location and confer with Duty Captain/Inspector on scene.
9. Advise the subject member that he or she may be tested by a number of different means, such as the PBT device and the Intoxilyzer.
10. Conduct alcohol test, using a PBT (portable breathalyzer test) device in a private setting, on uniformed member(s) of the service who discharged a firearm.
    a. Conduct the testing process in a private setting (e.g., Nearest Department facility, Department auto being used by the supervisor concerned) in a dignified, respectful fashion.
11. If the reading on the PBT device is less than .08, no further testing is required at this time.
12. If the reading on the PBT device is .08 or greater, which according to Section 1192 of the Vehicle and Traffic Law of the State of New York is indicative of intoxication, immediately notify Highway I.D.T.U. to respond to the IAB testing location to test the subject member using the Intoxilyzer that is maintained at the IAB facility. (It should be emphasized that the Intoxilyzer test at the IAB facility will be conducted by an I.D.T.U. technician.)
    a. Member(s) involved will be transported to the IAB testing facility by IAB personnel.
    b. A Highway District supervisor must be present during all phases of the testing procedure.
13. In the event that alternate arrangements must be made, the Intoxilyzer test will be conducted at the closest I.D.T.U. facility.
    a. Member(s) involved will be transported to the I.D.T.U. testing facility by I.A.B. personnel.
    b. A Highway District supervisor must be present during all phases of the testing procedure.

*NOTE*

*The I.D.T.U technician will utilize a specially developed form entitled* ***Ordered Breath Test Instruction Sheet*** *to interview the subject member(s), and a specially developed checklist entitled* ***Intoxilyzer Operational Checklist*** *to conduct the test. The entire Intoxilyzer testing process, including the reading of the test results, will be videotaped by another member of the Highway District. In cases where there is an Intoxilyzer reading of .08 or greater, a copy of the videotape will be provided to the I.A.B. Duty Captain concerned, who will follow all applicable Departmental procedures to safeguard the tape for evidentiary purposes.*

**INTERNAL AFFAIRS BUREAU DUTY CAPTAIN**

14. In order to determine fitness for duty, record and then take into account the Intoxilyzer reading, the PBT reading, and any other related indicia of intoxication, as indicated in Appendix "A".
    a. If the member is apparently unfit for duty, be guided by the procedures contained in *P.G. 206-12, "Removal of Firearms from Intoxicated Uniformed Member of the Service"* and other appropriate Department procedures.

*NOTE*

*If the subject member is determined to be unfit for duty, the IAB Command Center will be notified at (212) 741-8401 and a log number will be obtained.*

| | |
|---|---|
| *ADDITIONAL DATA* | *Members of the service are reminded of the contents of Patrol Guide procedures 203-04, "Fitness For Duty" and 204-08, "Firearms – General Regulations" as they relate to the use of alcohol and the possession of firearms while off duty.*<br><br>*Members should be aware that it would be prudent not to ingest alcoholic beverages up to four (4) hours prior to the commencement of their tour of duty.* |
| *RELATED PROCEDURES* | *Firearms Discharge by Uniformed Members of the Service (P.G. 212-29)*<br>*Removal of Firearms from Intoxicated Uniformed Member of the Service (P.G. 206-12)* |

3. Any provisions of the Department Manual or any other Department directive in conflict with the contents of this order are suspended.

BY DIRECTION OF THE POLICE COMMISSIONER

DISTRIBUTION
All Commands

## APPENDIX "A"

## INDICIA OF INTOXICATION

Face to face observation and interaction with the subject member allows the supervisor concerned to use his or her senses to obtain "evidence" of alcohol intoxication:

* The sense of sight
* The sense of hearing
* The sense of smell

SIGHT

* Bloodshot eyes
* Flushed face
* Soiled, mussed, disarrayed clothing
* Fumbling (e.g., dropping paperwork, keys etc.)
* The presence of alcohol containers
* Physical coordination (e.g., swaying, staggering, unsteady, falling, wobbling, sagging knees, using a wall or furniture as a prop)
* Unusual actions (e.g., hiccupping, belching, vomiting, fighting, sleepy, urinating)

HEARING

* Slurred speech
* Admission of drinking
* Inconsistent responses
* Incoherent
* Abusive language, profanity
* Antagonistic
* Unusual statements

SMELL

* Odor of alcohol on breath
* "Cover Up" odors (e.g., breath spray, mints)
* Open alcoholic beverages
* Unusual odors

*NOTE*: These traits are illustrative; this is not meant to be a complete list of indicia.