UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MICHAEL J. PALLADINO, as President of the NEW
YORK CITY DETECTIVES' ENDOWMENT
ASSOCIATION, INC., NEW YORK CITY
DETECTIVES' ENDOWMENT ASSOCIATION,
INC., EDWARD D. MULLINS, as President
of the SERGEANTS BENEVOLENT
ASSOCIATION of the CITY OF NEW YORK,                **AFFIDAVIT IN SUPPORT**
INC., SERGEANTS BENEVOLENT ASSOCIATION              **OF APPLICATION**
OF THE CITY OF NEW YORK, INC., THOMAS               **FOR PRELIMINARY**
DROGAN, as President of the LIEUTENANTS             **INJUNCTION**
BENEVOLENT ASSOCIATION of the POLICE
DEPARTMENT of the CITY OF NEW YORK,
LIEUTENANTS BENEVOLENT ASSOCIATION
of the POLICE DEPARTMENT of the CITY OF
NEW YORK, JOHN DOE, JANE ROE and all
POLICE OFFICERS named herein and others
similarly situated,

                            Plaintiffs,

        -against-

THE CITY OF NEW YORK, the NEW YORK CITY
POLICE DEPARTMENT, and RAYMOND W. KELLY,
as COMMISSIONER of the NEW YORK CITY POLICE
DEPARTMENT,

                            Defendants.
------------------------------------------------------------------X
STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

    MICHAEL J. PALLADINO, being duly sworn, deposes and says:

    1.    I am the President of the New York City Detectives' Endowment Association ("DEA"), a municipal employee organization duly formed under the New York City Administrative Code, which represents all Detectives employed by the Police Department of the City of New York ("NYPD"). I am one of the plaintiffs in this action and submit this affidavit in support of the annexed Order to Show Cause seeking a preliminary injunction against defendants for the continued implementation of the NYPD's September 30, 2007 Interim Order,

Reference P.G. 212 Series No. 52, with the subject "Alcohol Testing for Uniformed Members of the Service Involved in Firearms Discharges Resulting in Injury to or Death of a Person" ("Interim Order"). See Exhibit "B" of the Complaint. A copy of the Verified Complaint is annexed hereto as Exhibit "1".

2. The Interim Order provides, *inter alia,* that uniformed member(s) of the service, whether on or off-duty, who discharge a firearm will be tested using a portable breathalyzer test device ("PBT"). If the reading on the PBT device is .08 or greater, the "subject" is to respond to an Internal Affairs Bureau ("IAB") testing location for a further test using an Intoxilyzer. The entire testing process will be videotaped by a member of the Highway District. When the Intoxilyzer reading is .08 or greater, a copy of the videotape will be provided to the IAB Duty Captain. If the member is apparently unfit for duty, the P.G. 206-12 provision for "Removal of Firearms From Intoxicated Uniformed Member of the Service" is controlling. *See* Exhibit "A" of the Complaint.

3. There is no provision whatsoever in the Patrol Guide or more particularly in the Fitness For Duty provisions thereof, mandating or warranting suspicionless searches after a uniformed member of the Department discharges a firearm which results in death or injury of a person. In fact, other than a press release and requests to discuss the proposed policy with the Department, which were ignored, the Interim Order was issued without explanation to DEA or any other plaintiff or organization herein.

4. In addition to my duties as President of the DEA, I am also the Executive Vice President of the National Association of Police Organizations ("NAPO"), an entity representing Police Officers from police organizations throughout the United States. NAPO represents more than 250,000 law enforcement officers. When this subject was discussed at our recent annual convention in August, 2007, I was advised that none of the presidents of the member units were aware of any police department in the United States having a similar order requiring the testing

of police officers who discharge their firearms which results in the death or injury of a person. In spite of New York City's obvious dangers in police work, we are unfortunately unique in having our members tested for alcohol while performing their day-to-day heroic duties.

5.     A preliminary injunction is required during the pendency of this action as the process of conducting suspicionless searches has already begun with significant adverse consequences.[1] Indeed, this is a case of first impression with widespread impact. On October 3, 2007, Detectives Daniel Rivera, William Gonzales and Thomas Murphy were involved in a critical incident where they were compelled to discharge their firearms. Based upon my personal conversations with the three Detectives, as well as with other investigators and my own personal investigation, I offer the following factual account of the October 3rd shooting incident and unlawful implementation of the Interim Order:

6.     In the early morning hours, before the sun rose, the three Detectives, who are assigned to the Bronx Warrant Division, were involved in an investigation at 2422 Webster Avenue, and were looking for a suspect wanted in a double shooting. When the detectives knocked on the door, the suspect fled through the window. Upon being confronted by Detective Gonzales, the suspect fired at him and Gonzales returned fire. The suspect also fired at Detective Murphy and Detective Rivera, who both returned his fire. Detective Gonzales was hit by a bullet ricochet in the shin and Detective Rivera was hit by bullet fragments in his forehead. The

---

[1] It is also my understanding that there was yet another violation of a Police Officers' constitutional rights. On October 6, 2007, Gregory Chin, an off-duty "uniformed" Police Officer, witnessed the "Second Ave Madman" stabbing a victim. He performed the heroic duty of ending this horrific stabbing rampage by shooting the suspect. I further understand that this Police Officer felt humiliated and degraded by being subject to a breathalyzer test without reasonable suspicion of alcohol abuse by him. It is indeed a sad and dark day, when New York City's Bravest are treated like criminals without any legal justification whatsoever.

suspect was shot. When the three Detectives were taken to the hospital, they were observed closely, were not allowed to drink anything before the Breathalyzer test, and were not acknowledged by Internal Affairs for their outstanding performance until after they successfully completed the Breathalyzer test. The suspect was indicted on 13 felonies, including three counts of attempted murder of a police officer. Indeed, these brave individuals were the subjects of unwarranted suspicionless searches. They were demoralized, degraded, and humiliated to be subject to this invasion of their constitutional rights without any justification whatsoever.

6. As outlined in the Verified Complaint, the Interim Order is unconstitutional for a variety of reasons (see Paragraph 30 and the First Cause of Action – Paragraphs 49 through 57). If the Department's actions are not enjoined, members of the Detectives' Endowment Association, Patrolmen's Benevolent Association, the Sergeants Benevolent Association and the Lieutenants Benevolent Association, comprising approximately 35,000 members of the NYPD, will be irrevocably injured due to the constitutional violations of police officers' rights and protected privacy interests. Moreover, and significantly, the Interim order is so vague as to be unconstitutional. (See Paragraph 30 of Verified Complaint and Paragraphs 49 through 57.)

WHEREFORE, your deponent requests the relief sought herein, the issuance of a preliminary injunction during the pendency of this action, to protect the sanctity of our constitutional rights and the further violation thereof, and for such other and further relief as the court's may deem just and proper.

_____
Michael J. Palladino

Sworn to before me this
____ day of October, 2007
_____
Notary Public

CECIL MARTINEZ
Notary Public, State of New York
No. 01MA6046728
Qualified in Westchester County
Commission Expires Aug. 21, 20/0